1
2

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF PUERTO RICO

3
4
5
6
7
8

**NILDA FORTES-CORTES, et al.,**

**Plaintiffs,**

**v.**                                                    **CIVIL NO. 12-1900 (GAG)**

**DEPARTMENT OF EDUCATION,**

**Defendant.**

9                              __OPINION AND ORDER__

10        On October 29, 2012, Nilda Fortes-Cortes filed this suit on behalf of her minor daughter,

11   DRF (collectively "Plaintiffs") against the Puerto Rico Department of Education ("DOE"). (Docket

12   No. 1.)  The complaint alleges DOE failed to provide DRF with a free appropriate public education

13   ("FAPE") as required by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§

14   1400 *et seq.*  Plaintiffs first filed a motion for preliminary and permanent injunction (Docket No. 2).

15   Defendants filed a motion to dismiss the complaint (Docket No. 19), which Plaintiff opposed

16   (Docket No. 25).  The court held the motion in abeyance to allow the parties to explore settlement

17   options.  (See Docket No. 28.)  Plaintiff then filed for summary judgment (Docket No. 41), which

18   DOE opposed (Docket No. 50).  After reviewing the parties' submissions and applicable law, the

19   court **DENIES** Defendant's motion to dismiss (Docket No. 19), **GRANTS in part** and **DENIES**

20   **in part** Plaintiffs' motion for summary judgment (Docket No. 41), **finds as MOOT** Plaintiffs'

21   motion for a preliminary injunction (Docket No. 2), and  **GRANTS in part** and **DENIES in part**

22   Plaintiffs' motion for a permanent injunction (Docket No. 2).

23   **I.        Standard of Review**

24        Summary judgment is appropriate when "the pleadings, depositions, answers to

25   interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

26   genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

27   of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). See FED. R. CIV. P. 56(a). "An issue

28   is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it

**Civil No. 12-1900 (GAG)**

1  'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson

2  v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (internal citations omitted).

3  The moving party bears the initial burden of demonstrating the lack of evidence to support the non-

4  moving party's case. Celotex, 477 U.S. at 325. "The movant must aver an absence of evidence to

5  support the nonmoving party's case. The burden then shifts to the nonmovant to establish the

6  existence of at least one fact issue which is both genuine and material." Maldonado-Denis v.

7  Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmovant may establish a fact is

8  genuinely in dispute by citing particular evidence in the record or showing that either the materials

9  cited by the movant "do not establish the absence or presence of a genuine dispute, or that an adverse

10 party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). If the

11 court finds that some genuine factual issue remains, the resolution of which could affect the outcome

12 of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477

13 U.S. 242, 248 (1986).

14      When considering a motion for summary judgment, the court must view the evidence in the

15 light most favorable to the non-moving party and give that party the benefit of any and all reasonable

16 inferences. Id. at 255. Moreover, at the summary judgment stage, the court does not make

17 credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate,

18 however, if the non-moving party's case rests merely upon "conclusory allegations, improbable

19 inferences, and unsupported speculation." Forestier Fradera v. Mun. of Mayaguez, 440 F.3d 17, 21

20 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

21 **II.      Relevant Factual Background**

22      While the parties dispute each other's characterization of the facts, the backdrop of this case

23 is not disputed. DRF is a student with disabilities under the IDEA and has been registered as such

24 with the DOE. (See Docket No. 35-3 at 1.)

25      **A.      Attempts to Provide DRF with a FAPE**

26      Plaintiffs filed an administrative complaint on June 5, 2007, alleging DOE failed to provide

27

28                                          2

**Civil No. 12-1900 (GAG)**

1    DRF a FAPE.  (See Docket No. 41-5 at 1.)  That administrative complaint resulted in a stipulation

2    ("2007 Stipulation") between the parties and a resolution ("2007 Resolution") by the administrative

3    law judge ("ALJ").  (See Docket Nos. 41-4; 41-5.)  As part of Plaintiffs' administrative complaint

4    against DOE, Plaintiffs sought the purchase of educational services from a private institution, the

5    services of a technology assistant, and payment for transportation to approved related services.  (See

6    Docket Nos. 41-2 ¶ 4; 49 ¶ 4.)[1]  The 2007 Resolution issued by the ALJ ordered DRF to be placed

7    in a classroom of no more than ten students and that she receive an individualized system of

8    learning.  (See Docket Nos. 41-2 ¶ 5; 49 ¶ 5.)  In order to meet these requirements, the ALJ ordered

9    the purchase of educational services for DRF at the Colegio de Rehabilitacion Integral ("CODERI").

10   (See Docket Nos. 41-2 ¶ 6; 49 ¶ 6.)

11        When the 2011-12 academic year commenced, DRF was not allowed to enter CODERI for

12   her classes.  (See Docket Nos. 41-6 at 2; 41-7.)  Plaintiff filed an administrative complaint, 2011-

13   108-067, on October 28, 2011.  (See id. at 1.)  Plaintiff filed the complaint, in part, to have DRF

14   placed in an appropriate educational setting.  (See Docket No. 41-6 at 2.)  The ALJ issued a partial

15   resolution of 2011-108-067 on January 24, 2012 ("2012 Partial Resolution") and a full resolution

16   _____

17        [1] DOE denies and objects to this statement of fact because it runs afoul of the anti-ferreting

18   rule contained in Local Rule 56.  DOE also objects to Plaintiffs' statements of uncontested facts
     numbered 1, 4, 5, 7,  8, 9, 10, 12, 13, 14, 15, 18, 23, 24, 25, 27, 29, 31, and 32, for similar violations.

19   Local Rule 56(e) requires record citations in a "statement of material facts" to be cited to "the
     specific page or paragraph of identified record material supporting the assertion."  L.Cv.R. 56(e)

20   (D.P.R. 2010).  "The court may disregard any statement of fact not supported by a specific citation."

21   Id.  "The purpose of this rule is to relieve the district court of any responsibility to ferret through the
     record to discern whether any material fact is genuinely in dispute."  CMI Capital Mkt. Inv., LLC

22   v. Gonzalez-Toro, 520 F.3d 58, 62 (1st Cir. 2008).  Application of this rule lies within the court's

23   discretion.  This court has invoked the anti-ferreting rule to disregard statements of fact that are not
     cited in the past; however, the court cannot understand DOE's invocation of the rule under these

24   circumstances.  For instance, Plaintiffs' statement of uncontested fact at issue here, fact numbered
     4, Plaintiffs cite "Resolution 2007, Exhibit 3, page 1."  Page 1 of the 2007 Resolution does indeed

25   support Plaintiffs' fact.  The court wishes all statements of uncontested facts were properly cited as
     Plaintiffs' facts.  DOE's frivolous invocation of the anti-ferreting rule requires the court to expend

26   judicial resources unnecessarily.  Therefore, the court will not disregard Plaintiffs' fact for failure

27   to comply with Local Rule 56.

28                                              3

**Civil No. 12-1900 (GAG)**

1  ("2012 Resolution") on February 29, 2012. (Docket Nos. 41-7; 41-8.) In the 2012 Partial

2  Resolution, the ALJ stated, "CODERI refuses to accept contact with the student and her mother

3  because of her complaints regarding the educational procedures of the private institution . . . ."

4  (Docket No. 41-7 at 1.) The 2012 Partial Resolution noted that DOE decided to remove DRF from

5  CODERI. (See id.) The 2012 Partial Resolution also ordered the parties to meet and identify

6  schools that could provide an appropriate placement for DRF. (See id.) It is disputed whether DOE

7  has been able to locate an appropriate placement for DRF to date.

8         As part of the 2012 Resolution, DOE was required to equip the Efrain Sanchez-Hidalgo

9  School with air conditioning, special electrical service, a special education teacher, and various other

10  conditions in order to provide DRF with a FAPE. (See Docket No. 41-8 at 2.) One of these

11  conditions required DOE to coordinate a visit to the school by DRF's current psychologist in order

12  for the psychologist to give input on how best to integrate DRF into the school community. (See

13  Docket No. 41-8.) DRF's psychologist wrote a report concluding that the Efrain Sanchez-Hidalgo

14  School was not an appropriate placement for DRF. (See Docket No. 41-9 at 4.) While the details

15  of the report need not be recounted here, the psychologist listed a number of reasons why the

16  placement would be inappropriate for DRF. (See Docket No. 41-9.) DOE neither appealed the 2012

17  Partial Resolution of January 24, 2012, nor the 2012 Resolution of February 29, 2012.

18       **B.**     **Transportation Expenses**

19         The 2007 Stipulation contains a clause regarding reimbursement for the costs of transporting

20  DRF to services related to her education. (See Docket No. 41-4; 41-5 at 8.) The pertinent clause

21  originally stated, "The transportation grant is granted so that the complainant will receive the

22  education service. Both parties have agreed that the Department of Education will reimburse in total

23  twenty (20) dollars round trip for the transportation services." (Docket No. 41-4.) The clause was

24  amended by a handwritten note, initialed by the parties, to state, "[The transportation clause] is

25  amended for the purpose of establishing that in relation to the therapy related services, the

26  transportation costs will be reimbursed retroactively to the date of the signing of this agreement once

27

28                            4

**Civil No. 12-1900 (GAG)**

the corresponding unit of the Department of Education determines the appropriate payment." (<u>See</u> <u>id.</u>) DOE was to make these payments so that DRF would receive services related to her educational needs. (<u>See</u> Docket Nos. 41-2 ¶ 3; 49 ¶ 3.)

The 2007 Resolution included a discussion of the reimbursement rights for related transportation services to and from therapy sessions. (<u>See</u> Docket No. 41-5 at 8.)  In order to be reimbursed for the transportation costs to physical therapy, Plaintiffs were required to present to DOE "a Certification from the Public Service Commission, considering the transportation alternatives and routes for the pertinent payment of the transportation grants." (Docket No. 41-5.) "At the time that the Department of Education receives said Certification, it shall make the pertinent payment." (<u>See</u> <u>id.</u>)

DOE claims this provision requires the transportation costs to be calculated each year as reflected by the current route rates, as opposed to the door-to-door rates, which Plaintiffs argue apply.  The Directives Regarding School Transportation Services for Special Education Students, 2012-2013 School Year do not indicate the applicable transportation rates for reimbursement. (<u>See</u> Docket Nos. 41-2 ¶ 26; 49 ¶ 26.)  Plaintiffs maintain that the applicable rates are the route rates, as opposed to the door-to-door service rates. (<u>See</u> Docket Nos. 41-4; 41-10; 41-11; 41-12.)

**III.    Discussion**

The IDEA requires all states that accept federal money under the act to provide all disabled children within its jurisdiction with a FAPE.   20 U.S.C. § 1412(a)(1); <u>see</u> <u>Sebastian M. v. King Philip Reg'l Sch. Dist.</u>, 685 F.3d 79, 84 (1st Cir. 2012).   This includes subsidizing the cost of a private education when a sufficient public school placement in unavailable. <u>See</u> <u>Sebastian M.</u>, 685 F.3d at 84. "A FAPE encompasses special education and support services provided free of charge." <u>C.G.</u> <u>ex rel. A.S. v. Five Town Cmty. Sch. Dist.</u>, 513 F.3d 279, 284 (1st Cir. 2008) (citing 20 U.S.C. § 1401(9)).  Primarily, a FAPE is achieved through the use of an Individualized Education Program ("IEP"). <u>See</u> <u>D.B. ex rel. Elizabeth B. v. Esposito</u>, 675 F.3d 26, 34 (1st Cir. 2012).  However, the IDEA does not guarantee the best education possible for a disabled student; rather, it requires an adequate education. <u>See</u> <u>id.</u> Most courts characterize the school district's obligation as requiring

5

**Civil No. 12-1900 (GAG)**

an educational plan that is reasonably calculated to provide a meaningful education. See id. (citing

Town of Burlington v. Dep't of Educ. of Mass., 736 F.2d 773, 789 (1st Cir. 1984); D.S. v. Bayonne

Bd. of Educ., 602 F.3d 553, 557 (3d Cir. 2010)).

Parents of disabled students are guaranteed the opportunity to present a complaint regarding

the educational placement of the child, or the provision of a FAPE. See 20 U.S.C. 1415(b)(6).

Section 1415(f)(1) requires that parents receive an impartial due process hearing regarding their

complaint. See Weber v. Cranston Sch. Comm., 212 F.3d 41, 49 (1st Cir. 2000). If the parents are

dissatisfied with the result of the due process hearing, they may file a civil action in federal district

court to appeal the findings and the decision of the due process hearing. See 20 U.S.C.

1415(i)(2)(A). However, in order to properly file a judicial action, the parents must first exhaust the

available administrative remedies. See id. at § 1415(l). That section states:

> Nothing in this chapter shall be construed to restrict or limit the rights,
> procedures, and remedies available under the Constitution, the Americans
> with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the
> Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws
> protecting the rights of children with disabilities, except that before the filing
> of a civil action under such laws seeking relief that is also available under this
> subchapter, the procedures under subsections (f) and (g) shall be exhausted
> to the same extent as would be required had the action been brought under
> this subchapter.

Id.

**A.      Exhaustion of Administrative Remedies**

Plaintiffs' complaint primarily involves two causes of action: (1) DOE's denial of a FAPE

for DRF, and (2) the reduction in transportation reimbursement for related services. Plaintiffs rely

upon the prior administrative resolutions to demonstrate they exhausted the administrative remedies

for DRF's FAPE claim and rely upon the 2007 Stipulation and the 2007 Resolution to demonstrate

exhaustion of their transportation claim. Because the two causes of action rely upon different

administrative orders for exhaustion purposes, the court analyzes the two separately.

**1.      Plaintiffs' Denial of FAPE Claim**

First, DOE claims Plaintiffs have not exhausted administrative remedies for their FAPE

claim because Plaintiffs have neglected to bring these claims to an ALJ prior to filing this judicial

6

**Civil No. 12-1900 (GAG)**

action. (See Docket No. 50 at 2-4.) Plaintiffs rely upon the 2007 Stipulation, the 2007 Resolution, the 2012 Partial Resolution and the 2012 Resolution to demonstrate Plaintiffs have exhausted their administrative remedies prior to filing this judicial action. (See Docket No. 41-1 at 8.) The 2007 Stipulation and 2007 Resolution set out the parameters for an adequate educational placement for DRF. (Docket No. 41-4; 41-5.) These resolutions require DRF be placed in a classroom of no more than ten students, with individualized teaching and integrated technology. The 2012 Partial Resolution required an emergency meeting of DRF's Individualized Educational Program ("IEP") team to discuss placement alternatives in light of CODERI's refusal to admit DRF. (Docket No. 41-7.) The 2012 Resolution ordered DOE to comply with various conditions prior to DRF's placement in the Efrain Sanchez-Hidalgo School. (Docket No. 41-8.) Plaintiffs' claim in the present complaint seeks to force DOE to place DRF in a valid placement within the parameters set out by these administrative actions and resolutions.

DOE argues Plaintiffs have not brought this specific claim, that the Efrain Sanchez-Hidalgo School is an inappropriate placement to provide DRF with a FAPE, to the administrative board prior to filing this suit; thus, Plaintiffs have not exhausted administrative remedies. Plaintiffs claim an additional administrative action is unnecessary. The court agrees with Plaintiffs. In a similar case, the First Circuit decided once a plaintiff obtains an administrative order, the plaintiff does not need to file an additional administrative complaint to seek enforcement of the original order. As the court finds the analysis of <u>Nieves-Marquez v. P.R.</u>, 353 F.3d 108 (1st Cir. 2003), highly instructive, the court will discuss the case in depth.

In <u>Nieves-Marquez</u>, a student suffered from hearing loss. His parents filed an administrative complaint under Section 1415(b)(6) requesting an interpreter and the ALJ found an interpreter necessary to provide a FAPE. See <u>id.</u> at 112. This decision was not appealed by DOE. Upon commencement of the following school year, DOE failed to provide the student with an interpreter, even though the IEP team and all parties agreed one was necessary. The plaintiffs in <u>Nieves-Marquez</u> filed suit in federal court seeking, amongst other remedies, the immediate assignment of an interpreter. See <u>id.</u> at 113. DOE then moved to dismiss the claims for failure to exhaust

**Civil No. 12-1900 (GAG)**

1   administrative remedies because the plaintiffs did not bring the claim to the administrative board
2   prior to filing the judicial action.  See id. at 117.  Even though the IEP team agreed that the need for
3   an interpreter still existed, DOE argued the plaintiffs' claims must first go through the administrative
4   process and the plaintiff must seek an administrative order enforcing the original administrative
5   decision ordering the interpreter.  See id.

6        The First Circuit rejected this argument by DOE holding that even though the IEP must be
7   updated each year, the plaintiffs need not seek a new administrative order each year prior to bringing
8   their grievances to court.  See Nieves-Marquez, 353 F.3d at 117.  If a new administrative claim were
9   necessary each year, the claim may perpetually evade judicial review because judicial review of
10  IDEA claims necessitates more than nine months to resolve.  See id.  The court noted the obligation
11  to provide a FAPE to a student does not expire at the end of each academic year.  Id.

12       In regards to whether the plaintiffs had the right to appeal to federal court for enforcement
13  of the administrative resolution, the court found the plaintiffs had the right to appeal, even though
14  they were successful at the administrative level.  See id. at 115-16.  The court held that Congress
15  could not have "intended for a school system to be in a *better* position under IDEA when it refuses
16  to comply with a final administrative order and its continuing obligation than when it exercises its
17  statutory right to appeal from the order."  See id.  "It cannot be that a court is powerless under IDEA
18  to issue injunctive relief when the school system neither appeals from nor complies with a valid
19  administrative order and its continuing obligations."  Id.

20       As such, the court finds Plaintiffs' claim that DOE has not provided a FAPE for DRF is
21  properly appealed to the court at this time.  This claim has been the subject of the 2007 Stipulation,
22  the 2007 Resolution, the 2012 Partial Resolution and the 2012 Resolution.  These resolutions
23  adequately set out the parameters for a placement for DRF that will ensure she receives a FAPE.
24  Plaintiffs' claim is that, instead of appealing the administrative decisions, DOE simply failed to
25  comply; and now attempts to escape judicial review by forcing Plaintiffs to address these claims,
26  again, in an administrative setting.  As Nieves-Marquez holds, DOE cannot escape judicial review
27  by not appealing an administrative decision and then not complying with the order.

28

Civil No. 12-1900 (GAG)

It is important to note that the issue of DRF's placement is not raised for the first time on appeal to this court. The specific issue of what educational placement will adequately provide DRF with a FAPE, and therefore a meaningful education, has headlined the previous administrative resolutions. DOE argues the court would benefit from a more robust administrative record. (See Docket No. 50 ¶ 11.) However, the factual record before the court is more than adequate. Two full resolutions, one partial resolution and one stipulation is more than sufficient to place the court in a position to accurately rule on the merits of the case.

## 2. Plaintiffs' Reimbursement for Transportation to Related Services Claim

DOE raises the same argument pertaining to Plaintiffs' appeal for reimbursement of transportation expenses. (See Docket No. 50 at 2-5.) Here, the issue is slightly different as the transportation reimbursement issue was only the subject of the 2007 Stipulation and the 2007 Resolution, and was not included as part of the 2012 Partial Resolution or the 2012 Resolution. Plaintiffs' argument on this issue is also the same as for the denial of FAPE issue, that Nieves-Marquez controls and allows Plaintiffs to file their claims in federal court. As with the FAPE claim, the court finds it has jurisdiction to hear the reimbursement claim.

The only difference between this claim and the FAPE claim is that Plaintiffs seek enforcement of an administrative stipulation that was incorporated into the 2007 Resolution. This is a distinction without a difference. While the 2007 Stipulation and 2007 Resolution were signed in 2007, Plaintiffs claim DOE has unilaterally decided to alter the agreement regarding the correct rate of reimbursement in 2011. As the court previously discussed, the Nieves-Marquez court held that a plaintiff need not file a new administrative complaint to enforce an existing administrative order, and the plaintiff may file such an enforcement complaint in federal court. See 353 F.3d at 117. The present circumstances are similar and merit the same result. Additionally, the underlying sentiment of the Nieves-Marquez decision is that a plaintiff need not file multiple administrative complaints in order to enforce a previous administrative decision. That the specific clause at issue was contained in a stipulation agreement, that was subsequently integrated into a the 2007 Resolution, does not change the character of the proceedings. Here, Plaintiffs seek enforcement of

**Civil No. 12-1900 (GAG)**

1  the 2007 Stipulation and the 2007 Resolution.  Requiring them to first file a new administrative

2  complaint would seem superfluous and contradictory to <u>Nieves-Marquez</u>.

3        The result may have been different if the 2007 Stipulation was merely a settlement agreement

4  or if the 2007 Stipulation was not integrated into the 2007 Resolution.  The Eleventh Circuit has held

5  that plaintiffs claiming breach of a settlement agreement must first file an administrative complaint

6  in order to fully exhaust the administrative remedies under the IDEA.  <u>See</u> <u>Sch. Bd. of Lee Cnt'y.</u>

7  <u>Florida v. M.M.</u>, 348 Fed. Appx. 504, 511-12 (11th Cir. 2009); <u>J.P. v. Cherokee Cnt'y Bd. of Educ.</u>,

8  218 Fed. Appx. 911, 913-14 (11th Cir. 2007).  However, in this case, the 2007 Stipulation was

9  specifically incorporated into the 2007 Resolution.  (<u>See</u> Docket No. 41-5, "In relation to the

10  transportation grant for Speech and Language Therapy, Occupational Therapy and Education

11  Therapy must be paid according to what is established in the agreements in the Conciliation

12  Meeting.  Said payment will be made in an expeditious manner, and the mother of the minor-

13  complainant will present before the Department of Education the requried certifications.")  Hence,

14  the appeal seeks enforcement of the 2007 Resolution, which incorporates the 2007 Stipulation, rather

15  than seeking enforcement of a settlement agreement.  Therefore, Plaintiffs' claims are properly

16  submitted to this court for adjudication.

17        **B.    Plaintiffs' Denial of FAPE Claim**

18        Plaintiffs' main contention is that DOE failed to provide a FAPE to DRF because DOE

19  allowed CODERI to refuse DRF's admittance in 2011 and has failed to substitute CODERI with a

20  proper placement.  (<u>See</u> Docket No. 41-1 at 8.)  This claim stems from the 2012 administrative

21  complaint that was the subject of the 2012 Partial Resolution and the 2012 Resolution.  The 2012

22  Partial Resolution merely required the parties to meet and identify a placement that would allow

23  DRF to continue to receive necessary educational services.  (<u>See</u> Docket No. 41-7 at 1.)  The 2012

24  Resolution details the result of said meeting and orders DOE to comply with seven specific criteria.

25  Apparently, once these criteria were met, DRF would be placed in an educational setting that

26  complied with the IDEA.  Because Plaintiffs argue DOE has not complied with the detailed criteria

27  provided by the ALJ, the court reproduces them verbatim:

28

**Civil No. 12-1900 (GAG)**

    1.    Complete the air conditioner installation work in the classroom next to the Independent Life classroom at the Efrain Sanchez-Hidalgo School where the student will receive the educational service and in the Independent Life little house of the autism classroom.

    2.    Installation in the electrical service of 220 feeds in the Independent Life classroom for the use of the equipment.

    3.    Appointment of a Special Education teacher who will impact the student. This teacher will be exclusively for the student and will impact her individually.

    4.    Coordinate a visit to the Efrain Sanchez-Hidalgo School with the student's current psychologist so that she may give input for initiating a gradual integration to the school community in relation to Independent Life skills.

    5.    Present an OMEP work schedule with the estimated time for completing the work. The Department of Education has **ten (10) days** starting from the present Resolution to deliver it to the complainant.

    6.    Coordinate followup with Vocational Rehabilitation. The Department of Education designated Mrs. Maritza Hernandez, who will work with said followup, including the administration of the COACH test, once the whole school component is found.

    7.    In relation to the Technological Assistance equipment which is at home, the mother agrees to turn over the CHAT PC to the Services Center and on its part the Department of Education will complete the actions for delivery of the I-pad. In relation to the training on the equipment the Department of Education will refer Mrs. Ada Hernandez, Supervisor at the Secretariat in order to create a schedule or work plan for how they are going to be implemented in the student's service and how the training will be conducted. The complaining party will provide a model to the respondents for working with this plan.

(Docket No. 41-8) (emphasis in original).

    Plaintiffs argue DOE has failed to meet these conditions for the Efrain Sanchez-Hidalgo School. Plaintiffs also claim that while the Efrain Sanchez-Hidalgo School was the one mentioned in the 2012 Resolution, any placement that met the same criteria would be sufficient to provide DRF with a FAPE, and that the DOE did not attempt to place DRF in any such alternative placement. (See Docket No. 41-1 at 12-13.) Plaintiffs rest their non-compliance with the 2012 Resolution argument on criterion number four, which required DOE to coordinate a visit to the Efrain Sanchez-Hidalgo School by DRF's psychologist. Plaintiffs interpret this criterion to mean that DRF's psychologist must certify that the facility is an appropriate placement for DRF. (See id.) Because DRF's psychologist wrote a report stating the Efrain Sanchez-Hidalgo School was not an appropriate placement for DRF, DOE has not complied with the 2012 Resolution.

    The court does not interpret criterion number four in the same manner as Plaintiffs. There is no conditional language contained within that criterion or anywhere else in the 2012 Resolution that requires DRF's psychologist to approve the academic setting. By the terms of criterion number

11

**Civil No. 12-1900 (GAG)**

four itself, DOE was required to coordinate a time when DRF's psychologist could visit the Efrain Sanchez-Hidalgo School in order to provide input on how to acclimate and integrate DRF into the school's community.  Plaintiffs' attempt to create a condition precedent out of this criterion is misplaced and unsupported.

Additionally, the court finds it would be unduly burdensome, and peculiar, to require DOE to create a work schedule for all the required modifications to the classroom and begin construction, if the academic setting required an outside psychologist to first approve the placement.  If the ALJ intended to require DRF's psychologist to approve the placement, it seems much more likely that the ALJ would have specifically required such approval before any work schedule was produced or construction commenced.  The plain meaning of the fourth criterion does not establish a condition precedent, nor would such a reading comport with the timing or the requirements of the other criteria ordered by the ALJ.  Therefore, the court will not read such a requisite into the 2012 Resolution.

Plaintiffs do not argue that DOE failed to comply with any other condition of the 2012 Partial Resolution or the 2012 Resolution.  Such an educational setting seems appropriate given the needs of DRF.  Once the required improvements have been made, the Efrain Sanchez-Hidalgo School will ostensibly comport with the requirements of the 2012 Partial Resolution, the 2012 Resolution, and perhaps more importantly, the 2007 Resolution.  The 2007 Resolution chose CODERI as an appropriate placement because of the small group setting, individualized assistance, and integrated technology, amongst other reasons.  (See Docket No. 41-5.)  The Efrain Sanchez-Hidalgo School seems equally equipped to provide a similar experience to DRF.  As such, the court finds DOE has sufficiently provided DRF with a FAPE.  This placement seems to be a reasonable placement that will provide DRF with an adequate education.  See D.B. ex rel. Elizabeth B., 675 F.3d at 34. Therefore, Plaintiffs' motion for summary judgment on this claim is **DENIED**.

**C.    Plaintiffs' Denial of Transportation Reimbursement Claim**

Turning to Plaintiffs' next claim, the dispute primarily involves two clauses contained in the 2007 Stipulation.   The competing interpretations matter because Plaintiffs shall either be compensated for route rates or door-to-door rates for DRF's related services.  Plaintiffs contend the

Civil No. 12-1900 (GAG)

1    twenty dollar round-trip rate applies because the parties agreed to it in the 2007 Stipulation.  DOE

2    argues the 2007 Stipulation allowed DOE to recalculate the rate each school year.  The pertinent

3    parts of the 2007 Stipulation state: "The transportation grant is granted so that the complainant will

4    receive the education service.  Both parties have agreed that the Department of Education will

5    reimburse in total twenty (20) dollars round trip for the transportation services." (Docket No. 41-4.)

6    This clause was amended with a handwritten note, initialed by all parties, to state, "Item 2,

7    subsection (c) is amended for the purpose of establishing that in relation to the therapy related

8    services, the transportation costs will be reimbursed retroactively to the date of the signing of this

9    agreement once the corresponding unit of the Department of Education determines the appropriate

10   payment." (Id.)

11        There is no disagreement regarding the necessity of DOE to pay for transportation costs for

12   these related services; thus, the court will proceed to the actual disagreement: whether this clause

13   requires reimbursement of twenty dollars for each round trip DRF is transported to her related

14   service providers.  DOE's argument is two-pronged.  First, DOE argues the handwritten amendment

15   to the 2007 Stipulation nullified the twenty dollar requirement and replaced it with a rate to be

16   determined by DOE.  (See Docket No. 49 ¶ 2.)  Second, DOE contends the transportation grant must

17   be evaluated each year, just as the IEP is evaluated each year, and the rates are subject to amendment

18   based on rates calculated by the Public Services Commission.  (See Docket No. 50 at 7.)

19        The first argument is not developed by DOE as it is merely raised in its opposition to

20   Plaintiffs' statement of uncontested facts.  Such an argument, that is merely mentioned, but not

21   developed, may be deemed waived.  See Grajales v. P.R. Ports Auth., Case No. 09-2075 (FAB),

22   2013 WL 265937 *4 (D.P.R. Jan. 23, 2013) (citing McDonough v. Donahoe, 673 F.3d 41, 49 n.14

23   (1st Cir. 2012)).  It seems obvious to the court that the interpretation of the amendment is dispositive

24   of this claim and that DOE should have addressed it as its main contention.  Instead, DOE decided

25   to forego such an analysis by simply claiming the transportation rate must be determined on an

26   annual basis, and, in the alternative, that the claims are not properly before the court at this time.

27   If the amendment stands for what DOE claims, then Plaintiffs' reimbursement claim would fail

28                                                            13

**Civil No. 12-1900 (GAG)**

regardless.  To the extent DOE's response to Plaintiffs' stateme nt of uncontested facts could be construed as raising the issue with the court, the court deems it waived as undeveloped and conclusory.  See McDonough, 673 F.3d at 49 n.14.

DOE's second argument attempts to connect three regulations to demonstrate that the transportation costs must be determined each year and cannot be governed by the 2007 Stipulation. First, DOE states that it is the IEP that establishes the related services required for each student.  See 20 U.S.C. § 1414(d)(1)(A)(i)(IV) (stating an IEP must include "a statement of special education and related services and supplementary aids and services . . . .").   Second, the IEP must contain all related services, including transportation.  See 34 C.F.R. § 300.34(a) (stating "[r]elated services means transportation and such development, corrective, and other supportive services as are required to assist a child with a disability to benefit from special education . . . .").  Finally, DOE points out that the IEP must be reviewed every year.  See 20 U.S.C. § 1414(d)(2)(A) (stating, "At the begining of each school year, each local educational agency, State educational agency, or other State agency . . . shall have in effect, for each child with a disability in the agency's jurisdiction, an [IEP]."); 20 U.S.C. § 1414(d)(4)(A)(i) (stating that the local educational agency shall ensure the IEP team "reviews the child's IEP periodically, but not less frequently than annually, to determine whether the annual goals for the child are being achieved.").  Putting these regulations together, DOE argues that the IEP must be revised on an annual basis and that the transportation costs that must be reimbursed are governed by each subsequent IEP and cannot be governed by an outdated stipulation, such as the 2007 Stipulation.  DOE claims the 2007 Stipulation only governed the transportation costs for the 2007 school year and has no effect on subsequent school years.  (See Docket No. 50 at 7.)

The 2007 Stipulation and the 2007 Resolution are completely void of any language restricting them to the 2007 school year.  In neither document did the parties or the ALJ determine that the agreements would last only until the next IEP revision.  The documents demonstrate the agreements and resolution of the issues were meant to last well past the school year.

DOE seems to hint that it cannot be bound by past agreements or administrative law

**Civil No. 12-1900 (GAG)**

1  decisions that require future transportation costs because it is unable to foresee whether
2  transportation will be necessary until the future IEP has been written.  (See Docket No. 50 at 7,
3  (stating, "Being that the IEP is subject for review and revision every year, as required by IDEA, the
4  need for transportation is revised every year.")) While there may be instances when an IEP is
5  revised to reduce the amount of related services necessary due to a student's educational progress,
6  this is not such a case.  Unfortunately, as DRF's IEP states, she is twenty-two years old and suffers
7  from "Moderate Mental Retardation and Down Syndrome."  (Docket No. 35-3 at 1.)  The special
8  education services necessary to provide an adequate education for such a student do not drastically
9  vary from year to year.  It should be fairly simple to estimate the necessary transportation services
10  DRF will require in subsequent years.  Therefore, any argument that DOE cannot bind itself to an
11  agreement for DRF's future transportation costs for related services because it is unable to estimate
12  the cost is untenable.

13      The terms of the agreement clearly state DOE shall reimburse Plaintiffs twenty dollars for
14  each round trip.  It was amended to allow retroactive reimbursement.  The amount of that retroactive
15  reimbursement was to be determined by DOE.  The handwritten amendment did not alter the
16  previous language requiring DOE to reimburse Plaintiffs twenty dollars per round trip for
17  transportation to related services.  The amendment allowed for the retroactive reimbursement of such
18  expenses.  This is consistent with the 2007 Resolution that stated payment would be calculated
19  according to the 2007 Stipulation and that Plaintiffs were required to present DOE with the required
20  certifications.

21      The court notes that because this case arises from an IDEA claim, it can order retroactive
22  reimbursement even though DOE is a state agency.  Usually, sovereign immunity would only permit
23  a federal court to order prospective injunctive relief.  Ex parte Young, 209 U.S. 123 (1908).
24  However, the Commonwealth of Puerto Rico has waived its sovereign immunity by accepting
25  federal funds under the IDEA.  See Diaz-Fonseca,, 451 F.3d 13, 33 (1st Cir. 2006) (citing 20 U.S.C.
26  § 1403(a)).  While the Commonwealth did not waive all of its sovereign immunity, it waived
27  immunity for claims seeking compensatory equitable relief.  See Sch. Union No. 37 v. United Nat.

28

**Civil No. 12-1900 (GAG)**

Ins. Co., 617 F.3d 554, 559 (1st Cir. 2010) (citing Diaz-Fonseca, 451 F.3d at 31; Nieves-Marquez, 353 F.3d at 124).  As stated by the First Circuit:

> '[T]ort-like money damages' are not within the scope of appropriate relief under the IDEA, because the 'IDEA's primary purpose is to ensure FAPE, not to serve as a tort-like mechanism for compensating personal injury.'  In an IDEA-based suit like this one, monetary relief is limited to '[a]wards of compensatory education and equitable remedies that involve the payment of money, such as reimbursements to parents for expenses incurred on private educational services to which their child was later found to have been entitled.'

Diaz-Fonseca, 451 F.3d at 31 (quoting Nieves-Márquez, 353 F.3d at 124-25).  In this case, Plaintiffs seek reimbursement for transportation costs, not tort-like damages.  Therefore, the court **GRANTS** Plaintiffs' motion for summary judgment for this claim.

> ### D.    Preliminary and Permanent Injunction

The final issue to be resolved is Plaintiffs' motion for a preliminary and permanent injunction.  "A district court faced with a motion for a preliminary injunction must weigh four factors: '(1) the plaintiff's likelihood of success on the merits; (2) the potential for irreparable harm in the absence of an injunction; (3) whether issuing an injunction will burden the defendants less than denying an injunction would burden the plaintiffs; and (4) the effect, if any, on the public interest.'" Swarovski Aktiengesellschaft v. Bldg. No. 19, Inc., 704 F.3d 44, 48 (1st Cir. 2013) (quoting United States v. Weikert, 504 F.3d 1, 5 (1st Cir. 2007)).  "'The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success.'" Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 32 (2008) (quoting Amoco Prod. Co. v. Vill. of Gambell, AK, 480 U.S. 531, 546 n.12 (1987)).  In a case such as this, when the court has determined the actual success on the merits, a preliminary injunction is not proper.  Therefore, the court **finds as MOOT** Plaintiffs' motion for a preliminary injunction.

Plaintiffs have only demonstrated actual success on the merits for the reimbursement claim.  Plaintiffs were not successful on their FAPE claim and, therefore, are not entitled to a permanent injunction pertaining to that claim. The remaining factors for a permanent injunction weigh in favor

**Civil No. 12-1900 (GAG)**

of Plaintiffs as well.  First, DRF's ability to attend her related therapy services has been obstructed by DOE's refusal to reimburse Plaintiffs.  Plaintiffs do not have the economic resources to provide transportation for DRF to these services or arrange a private setting for her education that would include these services.  DRF will suffer irreparable harm if she is unable to attend these related services as part of her education.  There is a continuum by which students achieve academic success and academic performance has been correlated to student attendance.  See generally, Doris Dean Jones, The Impact of Student Attendance, Socio-Economic Status and Mobility on Student Achievement of Third Grade Students in Title I Schools (April 7, 2006) (unpublished Ph.D. dissertation, Virginia Polytechnic Institute and State University).  Therefore, any further delay in providing DRF with these services delays her educational progress.

Next, the burden on DOE will not be significant.  DOE has already stated it will reimburse Plaintiffs for the route rates as opposed to the door-to-door rates.  The difference, while significant to Plaintiffs, will not be overly burdensome on DOE.  The net effect of issuing this injunction will be that DOE is required to reimburse Plaintiffs at a slightly higher rate.

Finally, the effect on the public interest is slight, if at all.  This dispute pertaining to the rate of reimbursement does not concern the public from a policy perspective as DOE admits it must pay the reimbursement.  The issue is simply a matter of amount.  Therefore, as the factors for a permanent injunction favor Plaintiffs, the court **GRANTS in part** and **DENIES in part** Plaintiffs' motion for a permanent injunction at Docket No. 2.

**IV.     Conclusion**

For the foregoing reasons, the court **DENIES** Defendant's motion to dismiss (Docket No. 19), **GRANTS in part** and **DENIES in part** Plaintiffs' motion for summary judgment (Docket No. 41), **finds as MOOT** Plaintiffs' motion for a preliminary injunction (Docket No. 2), and **GRANTS in part** and **DENIES in part** Plaintiffs' motion for a permanent injunction (Docket No. 2).

**Civil No. 12-1900 (GAG)**

1

      **SO ORDERED**

2

3

4

    In San Juan, Puerto Rico this 12th day of March, 2013.

5

                          *S/Gustavo A. Gelpí*

6

                         GUSTAVO A. GELPÍ

7

                    United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28